IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANDREA A.[1], <br> **Plaintiff,** | ) <br> ) <br> ) |
| v. | ) Civil Action No. 7:20cv00650 <br> ) |
| KILOLO KIJAKAZI[2], <br> **Acting Commissioner of Social Security,** | ) <br> ) <br> ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Andrea A. ("Andrea") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Andrea alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her subjective allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **DENYING** Andrea's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Andrea failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

## **CLAIM HISTORY**

Andrea filed for DIB benefits in February 2018, claiming that her disability began on December 14, 2017[4] due to major depressive disorder. R. 12, 71, 186, 253.[5] Andrea's date last insured was June 30, 2019; thus, she would need to show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 14; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Andrea's claims at the initial and reconsideration levels of administrative review. R. 70–80, 83–99. ALJ Lisa B. Parrish held a hearing on April 3, 2020, to consider Andrea's claim for DIB, where vocational expert Gary Young testified, and Andrea was represented by counsel. On April 14, 2020, the ALJ entered her decision considering Andrea's claims under the familiar five-step process[6] and denying her claim for benefits. R. 12–25.

The ALJ found that Andrea suffered from the severe impairments of major depressive disorder, post-traumatic stress disorder ("PTSD"), and degenerative disc disease.[7] R. 14. The ALJ determined that these impairments, either individually or in combination, did not meet or

---

[4] Andrea initially alleged a disability onset date of May 8, 2016 but amended it to December 14, 2017 at the hearing with the ALJ. R. 14, 40.

[5] Andrea was 49 years old on her date last insured, which is considered a younger person, aged 18-49, under the Act. R. 24.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] The ALJ also determined that Andreas's impairments of migraines and constipation were non-severe, and her alleged fibromyalgia and attention deficit disorder were not medically determinable impairments. R. 14–15.

medically equal a listed impairment. R. 15–16. Specifically, the ALJ considered listing 1.04 (disorders of the spine), listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders). The ALJ found that regarding her mental impairments, Andrea had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 16.

The ALJ concluded that Andrea retained the residual functional capacity ("RFC") to perform a limited range of light work. Specifically, Andrea can never climb ladders, ropes, or scaffolds, or work at unprotected heights or near unguarded moving machinery, and can only occasionally stoop, but can frequently perform other postural movements. R. 17. Andrea is limited to simple, routine tasks, in a low stress work environment, defined as a work environment where she will not have to interact with the public in a customer service capacity, will not be responsible for fiscal or personnel decisions, and where her duties will not change during the day or on a daily basis. Id. Andrea can do no production rate/assembly line pace. Id. The ALJ determined that Andrea was unable to perform her past relevant work as a head waitress or bartender, but that she could perform jobs that exist in significant numbers in the national economy, such as office helper, inspector, and bench assembler. R. 24–25. Thus, the ALJ concluded that Andrea was not disabled. R. 25. Andrea appealed and the Appeals Council denied her request for review on September 15, 2020. R. 1–3.

## **ANALYSIS**

Andrea alleges that the ALJ erred by failing to properly assess her subjective allegations regarding her symptoms.

4

### A. Medical History Overview

Regarding her physical impairments, Andrea visited the emergency room on several occasions in 2018 and 2019 with complaints including back pain, shaking, headaches, and hallucinations.[8] R. 454, 528, 619. An EEG performed in January 2018 was normal. R. 633. Following a spell of altered consciousness on January 29, 2018, a neurologist ordered an MRI, performed in March 2018, which was also normal. R. 374. An MRI of the lumbar spine was performed in September 2018, showing mild spondylosis, small broad-based central posterior disc protrusion and moderate facet arthrosis/hypertrophy with moderate bilateral foraminal stenosis at L5-S1. R. 457–58, 662. Surgery was not recommended; however, Andrea did begin physical therapy in March 2019. R. 465, 662, 958. In February 2020, several months after her date last insured of June 2019, Andrea again presented to the emergency room with complaints of back pain, and a lumbar MRI showed "slightly worse" degenerative changes and disc desiccation of the lumbar spine, compared to the previous MRI. R. 868, 873.

Regarding her mental impairments, on December 14, 2017, Andrea was admitted to the hospital for suicidal thoughts. R. 309, 434. Andrea was discharged to self-care, on her request, on December 19, 2017, with diagnoses of PTSD and major depression, recurrent; the discharge note indicates she is "doing better today." R. 346–47, 354. Following her discharge, Andrea sought counseling and medication management at Bedford Community Health Center, complaining of increased depression, as well as anxiety, panic attacks, and difficulty sleeping. R. 431. Andrea had regular follow-up appointments for counseling and medication management, with continued complaints of depression and PTSD. Her mental status examinations consistently

---

[8] Several medical records indicate a traumatic brain injury from an earlier motor vehicle accident; however, it is not clear when this accident occurred. R. 372. Other records indicate "several" motor vehicle accidents, with no mention of a traumatic brain injury. R. 958. Andrea also reported suffering from migraines since childhood. R. 372

showed depressed or anxious mood, but were otherwise generally unremarkable, with no suicidal ideation or hallucinations, good or fair insight, and appropriate judgment. In March 2019, Andrea self-referred for counseling and psychiatric services at Blue Ridge Behavior Health, however her case was closed in May 2019.[9] R. 577, 606.

1. Medical Opinions

In March 2019, state agency physician Wyatt Beazley, III, reviewed the record and found Andrea was capable of a limited range of light work, including postural limitations. R. 93–95. The ALJ found Dr. Beazley's opinion persuasive. R. 23.

In June 2018 and March 2019, respectively, state agency psychologists Howard Leizer, Ph.D. and Joseph Leizer, Ph.D., reviewed the record. R. 75, 96. Dr. H. Leizer found moderate limitations in the domain of concentration, persistence, or pace, and mild limitations in the other domains, while Dr. J. Leizer found moderate limitations in the domain of concentration, persistence, or pace, and no limitations in the other domains. Id. The ALJ found Dr. H. Leizer non-persuasive, while Dr. J. Liezer was partially persuasive. R. 22–23.

**B. Subjective Allegations**

Andrea argues that the ALJ's assessment of her allegations is not supported by substantial evidence and emphasizes that she has "alleged mental and physical impairments far more limiting than found by the ALJ . . . includ[ing] difficulty lifting, standing, completing tasks, concentrating, understanding, following instructions, getting along with others, and needing to lie down during the day." Pl.'s Br. at 13, Dkt. 16. In support, Andrea points to records showing "back abnormalities on physical examination." Id. at 14. Andrea also points to her "frequent and

---

[9] Andrea explained at the hearing that she did not return to Blue Ridge Behavioral Health after her initial visit because there were people "trying to bum money" from her in the waiting room and it was "a scary kind of place." R. 52.

6

consistent mental health treatment" and contends her symptoms were "uncontrolled" because her medications were routinely changed at provider visits with Dr. Gallagher. Id.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[10] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[11] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed discussion of Andrea's medical history, along with her allegations, and the ALJ adequately supported her finding that Andrea's allegations were not

---

[10] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[11] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Andrea's allegations in her function report, including that she could not work because she had difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, and stair climbing, as well as with her memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others. R. 17. The ALJ further acknowledged Andrea's testimony at the hearing regarding her back, neck, shoulder and leg pain and numbness, her requirement for breaks every 20 minutes, need to lie day four to six times every day, and difficulty sleeping, as well as her depression, and PTSD symptoms. R. 17–18.

However, contrary to Andrea's claim that the ALJ "virtually ignore[d] [her] abnormal examination[] findings" the ALJ wrote as follows, specifically explaining how she weighed the evidence:

> [Andrea's] records do show that [she] had some slightly reduced strength in her upper and lower extremities. Her records show [a] reduced range of motion in her lumbar spine, and a slight deficit with external rotation of her left hip. However, [Andrea] had a normal gait which was noted to be pain free . . . normal sensation and coordination.

R. 19. In support, the ALJ reviewed in detail Andrea's treatment records, especially findings on physical examination, and concluded that while the record does support some limitations, it does not support "the alleged level of severity of her symptoms or functional limitations." R. 18–19. The ALJ also referenced Andrea's 2018 MRI, which contained only mild and moderate findings, as evidence supporting the physical RFC. R. 18.

Likewise, the ALJ clearly understood Andrea's mental health history, including her in-patient treatment early in the relevant period, as well as her regular counseling sessions during the period. The ALJ summarized Andrea's progress, noting that when she first began mental health treatment in December 2017 and early January 2018, her mood and affect were anxious

and depressed and she had suicidal ideation and hallucinations, but by mid-January 2018, her mood and affect were within normal limits. R. 19. In fact, in direct contrast to Andrea's argument that Dr. Gallagher's "frequent medication change beginning in January 2018" are evidence that her mood and affect were not stabilizing, the ALJ specifically noted "any abnormal mental status examination findings found by [Andrea's] psychotherapist after [January 15, 2018]." R. 19. These included March 2, 2018 and March 28, 2018. R. 397, 405. The ALJ highlighted that by April 2019, Andrea reported her depression "was much better." R. 20. Indeed, at the hearing with the ALJ in April 2020, Andrea explained that she had been on a stable dosage of Zoloft for the past year, and that prior to that, her provider had "tried [her] on and off several different other things" but had to return to Zoloft due to side effects from the other medications. R. 46.

Here, the ALJ considered the whole medical record, Andrea's allegations and testimony, and all the available opinion evidence. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported her analysis of Andrea's subjective complaints with substantial evidence, and that Andrea is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the

Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 4, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge