IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANDREA A., ) | |
| ) | |
| Plaintiff ) | Civil Action No. 7:20-CV-650 |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner ) | |
| of Social Security, ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on August 4, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Andrea A. (Andrea) has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Andrea filed an application for disability insurance benefits on February 26, 2018, alleging disability beginning on May 8, 2016. Andrea was 48 years old at the alleged onset date and her "date last insured" (DLI) was June 30, 2019. She seeks disability based on a major depressive disorder. R. 214. The ALJ found that Andrea had severe impairments of major depressive disorder, post-traumatic stress disorder, and degenerative disc disease, but that

none of her impairments met or medically equaled a listed impairment. The ALJ found that Andrea had the residual functional capacity (RFC) to perform light work with the additional limitations of no climbing ladders, ropes, or scaffolds; only occasionally stooping and frequently performing other postural movements. She could not work at unprotected heights or near unguarded moving machinery. She was limited to simple, routine tasks in a low-stress work environment, defined as no interaction with the public in a customer service capacity, with no responsibility for fiscal or personnel decisions, and where her duties would not change during the day or on a daily basis. She could not work at a production rate or assembly line pace. R. 17.

Based on this RFC, the ALJ determined that Andrea could not return to her past relevant work as a head waitress or bartender because the physical and mental requirements exceeded her current RFC. However, the ALJ found, based on the testimony of a vocational expert, that Andrea could do the jobs of office helper, inspector, and bench assembler, and that such jobs existed in significant numbers in the national economy. Therefore, the ALJ concluded that Andrea was not disabled. R. 24-25. The Appeals Council denied Andrea's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Andrea objects to the magistrate judge's conclusion that the ALJ adequately assessed her subjective allegations.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

3

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

4

objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objection[2]

Andrea objects to the magistrate judge's finding that the ALJ properly considered her subjective allegations. She argues that the ALJ improperly discounted her allegations regarding the severity of her mental health impairment which led him to improperly assess her RFC.

The mental RFC assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[3] or meets a listing for a mental impairment at Step 3 of the

---

[2] Detailed facts about Andrea's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 19) and in the administrative transcript (ECF No. 12) and will not be repeated here except as necessary to address her objections.

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996).

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id., SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id., SSR 96-8P, 1996 WL 374184 at *7.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to

7

determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources and other sources are considered. Id. 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms, and any description by medical sources or nonmedical sources about how the symptoms affect activities of daily living and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

Id.

In Andrea's case, when the ALJ did the RFC assessment at Step 4 she summarized Andrea's testimony at the hearing and reviewed the medical evidence in the record and the opinions of the state agency psychological consultants. R. 17-23. The ALJ noted Andrea's hearing testimony that she had difficulty with her memory, completing tasks, concentrating, understanding and following instructions, having depression, waking up breathless and in tears from nightmares, and having hallucinations of past trauma that occurred a couple of times per

8

week. Andrea testified that she was tired because she did not sleep well. R. 17-18. The ALJ also noted that her mental status examinations generally showed her to be alert and oriented to person, place, and time. She was normally groomed and her speech was clear and appropriate. Her thought process was logical, her insight was good and her judgment was fair. Her hygiene was normal. R. 19. When she first started mental health treatment in January 2017 her mood and affect were anxious and depressed. She had suicidal ideation and reported auditory hallucinations. R. 19. In January 2018 and on multiple occasions thereafter, her mood and affect were within normal limits and her mental status was otherwise within normal limits with no reports of hallucinations, although in March 2018 her she had a depressed mood and flat affect. R. 19.

The ALJ concluded that "claimant's abnormal mental status examination findings support claimant having some limitations in her mental functioning. However, her records do not support the alleged severity of claimant's mental symptoms and mental functioning and support the limitations in the residual functional capacity." R. 20. To accommodate Andrea's mental limitations, the ALJ restricted her to simple routine tasks in a low stress work environment, defined as not having to interact with the public in a customer service capacity, not being responsible for fiscal or personnel decisions, and not having changes to her routine during the day or on a daily basis. R. 17.

Andrea argued to the magistrate judge that her allegations of disabling mental impairments were supported by the record. Starting in December 2017 with a five-day hospitalization, she had maintained frequent and consistent mental health treatment. She had consistently reported significant mental difficulties and routinely had abnormal findings on

9

mental status examinations. From January 2018 through March 2019 her psychiatrist tried a variety of medications to address her symptoms or side effects from medication. In March 2019 she was described as shaking and crying at an appointment and in September 2019 her mental status examination showed psychomotor retardation with anxious and depressed mood and affect.

The magistrate judge found that the ALJ thoroughly considered the entire record and resolved conflicts in the evidence by applying the proper legal standards as set out in the regulations. The magistrate judge found that Andrea was asking the court to reweigh the evidence, which it is not at liberty to do. The magistrate judge concluded that ALJ's analysis of Andrea's subjective complaints was supported by substantial evidence.

In her objections, Andrea again argues that her subjective allegations are supported by the fact that her treating psychiatrist regularly changed her medication in hopes of better controlling her symptoms and limiting side effects. She points out that the doctor adjusted her medication in January, May, July, October, and December 2018, as well as in February and March 2019. She asserts that the changes in medication indicate that she was not stabilized in 2018. In addition, she appears to assert that she may be seeking benefits for a closed period of disability from December 2018 through April 2019.

While an ALJ need not cite to every piece of evidence in the record, Aytch v. Astrue, 686 F.Supp.2d 590, 602 (E.D.N.C. 2010), a review of the record shows that the ALJ cited to most of the medical records cited by Andrea. See R. 19-20, 386, 421, 731, 732, 734-35, 740-42. The ALJ also listed medications that Andrea took during this time period. R. 20. Nevertheless, the ALJ relied on Andrea's essentially normal mental status examinations from

January 18, 2018 through her DLI to find that her allegation that her mental health issues were disabling was not entirely consistent with the record. R. 20.

Andrea disagrees with the ALJ assessment and asks the court to find that the assessment was in error. However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence." Hays, 907 F.2d at 1456. Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is disabled, it is the responsibility of the ALJ to make the determination as to disability. Barbare v. Saul, 816 F. App'x 828, 832 (4th Cir. 2020) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). It also is up to the ALJ to determine whether a claimant's allegations of disabling symptoms are consistent with the objective evidence in the record. Cf. Lawson v. Colvin, No. CBD-13-0728, 2014 WL 2159324, at *5 (D. Md. May 22, 2014) (noting under prior regulations ALJ was required to make credibility determinations).

In this case, while it appears that the doctor changed Andrea's medication several times over the course of sixteen months in response to her complaints, the evidence also shows that during the same period her mental status examinations were mostly within normal limits. The ALJ supported her determination that Andrea's subjective complaints were not fully consistent with the evidence of record by pointing to her mostly normal mental status examinations.[4]

---

[4] With regard to Andrea's pointing out to the magistrate judge that records showed she presented to an initial visit to a mental health care provider on March 27, 2019 as shaking and crying, during the same visit a "check-the-box" form noted her attitude as "calm and cooperative," her behavior as having "no unusual movements or psychomotor changes," her speech as "normal rate/tone/volume w/out pressure" and her affect as "reactive and mood congruent." R. 577-80. Similarly, when Andrea presented for an initial evaluation on September 27, 2019 (after her DLI) and at several appointments thereafter her motor activity and energy level were described as "Psychomotor Retardation." R. 963, 966, 967, 974. However, at appointments in October and November 2019 and in January 2020 her motor activity and energy level were described as "Appropriate." R. 971, 973,

The court finds that the mental status examinations are substantial evidence that supports the ALJ's conclusion that Andrea is not disabled. Accordingly, Andrea's objection to the magistrate judge's finding on this issue is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence, and particularly that the ALJ properly assessed Andrea's subjective allegations of her mental health symptoms. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 11/23/2021

Michael F. Urbanski
Chief United States District Judge

---

975, 979. The ALJ did not address the inconsistencies in the record and Andrea did not raise the inconsistencies as an issue in her objections. However, it appears that the ALJ resolved the inconsistencies by finding that for the most part Andrea's mental status examinations were within normal limits.